**SO ORDERED.**

**SIGNED this 11 day of December, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____


**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Target Graphics, Inc.** | ) | **No. 05-14009** |
| | ) | **Chapter 11** |
| Debtor | ) | |

**MEMORANDUM**

This case came before the court on the Debtor's Motion to Alter or Amend and/or Motion for New Trial and the Debtor's Motion to Amend Plan of Reorganization filed on November 16, 2006. The latter motion will be granted, because there is nothing in the Bankruptcy Code to prevent a debtor in possession from filing a new plan in a pending Chapter 11 case following the denial of confirmation of a previous plan.[1] The court will deny the motion to alter or amend.

---

[1] Because the stay has been vacated in this case, the reorganization efforts of the debtor can only go forward if the debtor and creditor Merrill Lynch Business Financial Services Inc.
(continued...)

This Chapter 11 case was commenced on June 28, 2005. The debtor's major secured creditor is Merrill Lynch Business Financial Services Inc. ("MLBFS"), and it has filed proofs of claim totaling $1,936,489. The creditor holds a blanket lien on all of the debtor's assets, which includes the debtor's equipment, inventory, and accounts receivable. Because the amount of its claim exceeds the value of its collateral, MLBFS is an undersecured creditor. Also, because of the extent of its unsecured claim, MLBFS has always been in the position of controlling whether the class of unsecured creditors accepted or rejected any Chapter 11 plan proposal made by the debtor.

On March 16, 2006, MLBFS filed a motion for relief from stay under the provisions of 11 U.S.C. § 362(d). By agreement of the parties, that motion was passed seven times while the debtor attempted to negotiate and formulate a Chapter 11 plan. The debtor's first plan valued the secured portion of MLBFS's claim at $613,532.50, and provided that that amount was to be paid in quarterly payments of $37,101.99 with interest at 7.75%. The remaining, unsecured portion of the claim was to be paid with other unsecured creditors on a pro rata basis at $8,850 per quarter for a period of five years. MLBFS did not agree to the debtor's plan proposal and it voted against the plan. Because the plan proposed that the debtor's sole shareholder would retain his ownership in the debtor, the debtor's first plan violated the absolute priority rule and could not be confirmed. *See* 11 U.S.C. §§ 1129(b)(1), 1129(b)(2)(B).

---

[1] (...continued)
come to an agreement on a consensual plan. Otherwise, the creditor is free to pursue its foreclosure rights pursuant to state law.

The debtor then sought and was granted permission to file an amended plan. That plan once again went through the disclosure statement process and, upon approval of the disclosure statement, a confirmation hearing was ultimately scheduled for October 18, 2006. MLBFS's motion for relief from stay, which had been repeatedly continued throughout 2006, was scheduled to be heard, by agreement of the parties, at the same time as the confirmation hearing.

The debtor's amended plan proposed the same treatment for MLBFS's secured claim as the debtor's initial plan. The only change made to the plan was debtor's proposal to pay an additional $40,000 to unsecured creditors from a capital contribution to be made by the debtor's sole shareholder. MLBFS once again voted against the debtor's plan and objected to confirmation. A trial was held on October 18, 2006, on both the debtor's amended plan and MLBFS's motion for relief from stay.

After hearing the evidence presented at the trial, and after considering the briefs and arguments of the parties, the court entered a memorandum opinion that denied confirmation of the debtor's amended plan and granted MLBFS's motion for relief from the stay. The court found that the $40,000 capital contribution did not satisfy the new value exception to the absolute priority rule and thus the debtor's plan could not be confirmed. Also, the court pointed out in its opinion that, even using the debtor's own evidence, it had undervalued the secured portion of MLBFS's claim in its plan and thus the plan violated the requirements set forth in 11 U.S.C. § 1129(a)(8).

Despite the parties' agreement that the confirmation hearing and hearing on MLBFS's motion for relief from stay would be determined at the same time, which is a common occur-

rence in a Chapter 11 case so that the parties can bring in their witnesses and proof for one hearing, the debtor now requests that the court vacate the order granting stay relief and afford the debtor a third opportunity to go through the confirmation process.[2] MLBFS opposes the debtor's request, pointing out that the debtor has failed to make any payments to MLBFS during the pendency of this Chapter 11 case, *see* 11 U.S.C. § 362(d)(1), that its motion for relief from stay (which has been pending since March 16, 2006) was granted after a hearing agreed to by the parties, and that it would be improper to set aside the order vacating the stay in order to permit the debtor to go through the confirmation process again. The law clearly supports MLBFS's position.

---

[2] The debtor wishes to amend its plan to propose that the debtor's sole shareholder will inject an additional $60,000 into the debtor for "working capital." The debtor also proposes to pay the secured value of MLBFS's claim at an amount determined by the court. These proposals would once again raise issues regarding the satisfaction of the new value exception to the absolute priority rule and feasibility. Although the court found it unnecessary to resolve the valuation issue in denying confirmation of the debtor's amended plan, it appeared to the court that the value of MLBFS's collateral was somewhere between the value figures offered by the parties, and certainly significantly more than the value figures offered by the debtor. The valuation question was exceedingly difficult in this case because of the huge difference between the opinions of the parties' appraisers, because the appraisers' valuation methods were similar, because the appraisers' expertise and experience were comparable, and because the debtor's testimony regarding the values of the accounts receivable and inventory (which aggregate $233,386) presented much lower figures than those reported by the debtor's most recent operating report (which total $550,971).

The court believes the cost of installing the equipment would be closer to the figure espoused by the debtor's appraiser ($75,000) than the figure employed by MLBFS's appraiser ($200,000). However, the court would give equal weight to the fair market value (without installation costs) put forth by each appraiser, and so believes that the value is approximately $612,500. Adding $100,000 for installation costs would result in a total value in place of the equipment of $712,500. Other categories of MLBFS's collateral (accounts receivable, inventory, and cash) would be subject to greater fluctuation and there is no need to comment on the current value of that collateral at this point.

In seeking to set aside the court's order granting MLBFS stay relief, the debtor relies on Rule 59(e) of the Federal Rules of Civil Procedure, made applicable in bankruptcy cases by Rule 9023 of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Appellate Panel for the Sixth Circuit has recently summarized this circuit's standards for resolving a motion to alter or amend as follows:

> Rule 59(e) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 9023, allows a court to consider a "motion to alter or amend a judgment." The Sixth Circuit Court of Appeals has held that "a court should grant such a motion only 'if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.'" [*sic*] The rule "is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." The debtor bore the burden of showing "that alteration or amendment of the original judgment is appropriate."

*Barclay v. Reimer & Lorber Co. (In re Barclay)*, 337 B.R. 728 (B.A.P. 6th Cir. 2006) (unpublished table decision), *available at* 2006 WL 238139, at *6 (quoting *Keenan v. Bagley*, 262 F. Supp. 2d 826, 830 (N.D. Ohio 2003) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters Co.*, 178 F.3d 804, 834 (6th Cir. 1999)); *Sherwood v. Royal Ins. Co.*, 290 F. Supp. 2d 856, 858 (N.D. Ohio 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)); *Regions Bank v. Wachovia Bank, NA (In re Goldberg)*, 248 B.R. 209, 211 (S.D. Ga. 2000)). The court does not believe that it committed any error of law, nor has the debtor produced any newly discovered evidence to justify setting aside the order granting stay relief.[3]

---

[3] In denying a motion to reconsider an order denying confirmation of a Chapter 11 plan and dismissing a case, one bankruptcy court has held that "a post-confirmation hearing offer to amend an unconfirmed plan of reorganization is not newly discovered evidence on which a motion for reconsideration can be based." *In re Investors Fla. Aggressive Growth Fund, Ltd.*, 168 B.R. 760, 768 (Bankr. N.D. Fla. 1994) (citing *In re French Quarters E., L.P.*, 148 B.R. 910, 912-
(continued...)

Moreover, the court believes that it would be unjust to set aside the stay relief order that it properly granted after the hearing on October 18, 2006. That stay relief order was granted after a hearing on a motion that has been pending since March 16, 2006, and that was set to be heard, and decided, on October 18, 2006. At some point, litigation must end and, once it does, and once a court has rendered its decision, a court should not grant a disappointed litigant another chance to litigate a matter again unless there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. Here, the Rule 59 standard for a new trial has not been met, and thus the court must deny the motion.

For the foregoing reasons, the court will enter a separate order (i) granting the Debtor's Motion to Amend Plan of Reorganization, and (ii) denying the Debtor's Motion to Alter or Amend and/or Motion for New Trial.

###

---

[3] (...continued)
13 (Bankr. W.D. Mo. 1992)). In the words of another bankruptcy court:

> Debtor has not demonstrated any new or changed circumstance or any potential plan provisions which were not proposed or could not have been proposed the first time around in the amended plan. . . .
> . . . .
> All issues raised in debtor's motion were raised or could have been raised in the amended plan and disclosure statement or at the confirmation hearing.

*French Quarters E., L.P.*, 148 B.R. at 913 (denying request for opportunity to file second amended plan 15 months into case).