**SO ORDERED.**

**SIGNED this 16 day of March, 2007.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Target Graphics, Inc.** | ) | **No. 05-14009** |
| | ) | **Chapter11** |
| Debtor | ) | |

**MEMORANDUM**

This case is before the court on a motion to stay pending appeal the order entered on November 7, 2006, which granted the motion for relief from the automatic stay filed on behalf of the debtor's major secured creditor, Merrill Lynch Business Financial Services Inc. ("MLBFS"). The debtor seeks a stay of the November 7 order pending its appeal of both that order, which also denied confirmation of the debtor's chapter 11 plan, and the court's order entered on December 11, 2006, which denied the debtor's motion to alter or amend or for new trial.

1

The facts and procedural history of this case are set forth in previous memorandum opinions that accompany the orders the debtor is appealing. Following a trial, the court entered the November 7 memorandum and order, denying confirmation of the debtor's second plan of reorganization and granting MLBFS's motion for relief from stay. The debtor then sought an order altering or amending the November 7 order, or a new trial. Because the court concluded that the debtor did not satisfy the requirements for granting such relief under Rule 59 of the Federal Rules of Civil Procedure (made applicable to bankruptcy matters by Rule 9023 of the Federal Rules of Bankruptcy Procedure), the debtor's motion was denied on December 11, 2006.

Because the November 7 order granted MLBFS relief from the stay to enforce its security interests in virtually all of the debtor's assets, the debtor is seeking a stay of the order because MLBFS may foreclose on its collateral during the pendency of the debtor's appeal if such a stay is not granted. MLBFS opposes a stay, arguing that the debtor's appeal has no merit and that any stay will harm MLBFS as the debtor continues to use MLBFS's collateral without making any payments to MLBFS since the beginning of the chapter 11 case.

In determining whether to grant a stay pending appeal the court must consider the following factors:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;
> (2) the likelihood that the moving party will be irreparably harmed absent a stay;
> (3) the prospect that others will be harmed if the court grants the stay; and
> (4) the public interest in granting the stay.

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* For example, where irreparable harm to the appealing party from not granting a stay is great, the court should require less of a showing of probable success on the merits. As the Sixth Circuit Court of Appeals explained:

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Id.* (citations omitted).

If a stay of the court's order granting stay relief is not granted, MLBFS may foreclose on its collateral during the pendency of the appeal. That harm would be irreparable because, once the debtor loses its assets, the appeal would be mooted and there would be no opportunity for the debtor to obtain a reversal of the court's order that denied confirmation of the debtor's plan and granted MLBFS stay relief. Hence, the court will consider whether, at a minimum, the debtor has presented "serious questions going to the merits" in this case.[1]

---

[1] Although the court will use the minimum standard in evaluating the likelihood that the debtor will prevail on the merits of the appeal, it should be noted that the direct harm to the debtor is lessened by the fact that the debtor has no equity in the property and MLBFS is well over $1 million undersecured. *See In re Hawthorne Plaza Ltd.,* No. 01-31936-TC, 2002 WL 1181057 at *5 (Bankr. N.D. Cal. May 30, 2002) (denying a stay pending appeal and noting that the effect of the hardship on the debtor, namely a foreclosure sale of the debtor's property, was attenuated by the fact that the debtor had no equity in the property).

Confirmation of the debtor's plan was denied for two reasons. First, the court found that the debtor failed to satisfy the "new value" exception to the absolute priority rule, and, second, the court found that the debtor's plan failed to meet the "fair and equitable" requirement set forth in 11 U.S.C. § 1129(a)(8) because it failed to pay the value of MLBFS's secured claim in deferred cash payments having a present value at least equal to MLBFS's secured claim. The debtor has appealed the denial of confirmation. The initial question is whether the debtor has raised "serious questions" that cast at least some doubt on the correctness of the court's confirmation ruling.

"The absolute priority rule . . . requires that 'a dissenting class of unsecured creditors . . . be provided for in full before any junior class can receive or retain any property [under a reorganization] plan.'" *In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 545 (Bankr. E.D. Tenn. 1997) (quoting *In re Haskell Dawes, Inc.*, 199 B.R. 867, 871 (Bankr. E.D. Pa. 1996) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988))). The debtor's first chapter 11 plan could not be confirmed because the unsecured class of creditors rejected the plan and the plan provided that the debtor's sole shareholder would retain his ownership interest in the debtor. Hence, that plan clearly violated the absolute priority rule. The debtor was granted leave to amend its plan in order to try a second time to achieve confirmation. In the debtor's second plan, the only change from the first plan was a proposal that the debtor's sole shareholder would infuse $40,000 into the debtor as an additional payment to be shared by unsecured creditors. By reason of this $40,000 payment, the debtor's shareholder was attempting to satisfy the new value exception to the absolute priority rule. Because the unsecured class once again voted against the

debtor's plan, a major confirmation issue was whether the $40,000 payment did, indeed, satisfy the new value exception to the absolute priority rule. The court concluded that it did not.

Under the new value exception, equity holders may own and control a reorganized business without paying impaired senior classes in full by exchanging new value to acquire ownership of the reorganized debtor. *In re Creekside Landing Ltd.,* 140 B.R. 713 (Bankr. M.D. Tenn. 1992). The new value, however, must be (1) essential or necessary to the success of the reorganization, and (2) reasonably equivalent to the property's value. *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106 (1939); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581 (6th Cir. 1986). With respect to the "essential and necessary" requirement, the court in *Creekside Landing* stated:

> To satisfy the "new value exception," the contribution of new value must be substantial and essential. The debtor probably has to prove that it cannot reorganize without new capital. Some courts have said that reorganization must be impossible without the new contribution.

*In re Creekside Landing, Ltd.,* 140 B.R. at 717 (citations omitted). In commenting on the showing that must be made, the court in *Crosscreek Apartments* stated:

> "A rigorous showing as to these requirements is necessary in order to ensure that a debtor's equity holders do not eviscerate the absolute priority rule by means of contrived infusion." Like other confirmation requirements, the burden of proving these new value elements lies with the plan proponent.

*In re Crosscreek Apartments, Ltd.,* 213 B.R. at 546 (citations omitted).

In this case, the court specifically found that the debtor failed to prove that the $40,000 proposed infusion was necessary or essential to the debtor's reorganization.[2] The debtor's first plan was proposed without mention of any need for an infusion of additional capital. The $40,000 proposal was made only after the original plan failed because it violated the absolute priority rule. In attempting to explain the need for the $40,000 contribution, the debtor asserted that the unsecured creditors, by receiving an increased distribution, would more likely extend credit to the debtor once its plan was confirmed.[3] The debtor, however, presented no proof to substantiate its assertion. As the court stated in its memorandum opinion dated November 7, 2006:

> For the corollary to apply, the new value must be "essential to the success of the undertaking." The debtor asserts that this requirement is satisfied because it "believes" that trade creditors would be more likely to sell to the debtor on credit terms if the capital contribution is made and that the ability to buy on credit terms would be beneficial to the debtor. The debtor, however, offered no proof to substantiate its belief. While a reorganized debtor may well receive more favorable credit terms from vendors than it received during the pendency of its bankruptcy case, the debtor presented no evidence that trade credit would be more likely if vendors share in a distribution of $217,000 (12.8%) rather than a distribution of $177,000 (10.4%). Hence, the evidence did not establish that a $40,000 capital contribution is essential or necessary to the debtor's successful reorganization.

---

[2] Whether a capital contribution is necessary or essential to the reorganization, so that the "new value" corollary to the absolute priority rule is applicable, is an issue of fact, *see Official Creditors' Comm. v. Potter Material Serv., Inc. (In re Potter Material Serv., Inc.)*, 781 F.2d 99, 101-02 (7th Cir. 1986), and, on appeal, a bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses," Fed. R. Bankr. P. 8013.

[3] The debtor's owner testified that he "hoped" that confirmation would result in the debtor receiving pre-bankruptcy credit terms from vendors and that he "believed" that the capital contribution would assist in that regard. (Tr. at 86-87 (Oct. 18, 2006).) On cross-examination, the witness testified that he also "hoped" for regular credit terms even if the original plan – which did not provide for the owner to make a capital contribution – was confirmed. (*Id.* at 102-03.)

(Mem. Op., at 5 (citations omitted).) In moving for a stay pending an appeal, the debtor has failed to raise any "serious questions" that would cast doubt on the court's finding that the debtor failed to prove that its $40,000 proposed contribution was "essential or necessary" to the debtor's reorganization.

It appears that the debtor's main contention on appeal with respect to the new value exception is that the court erred in concluding that the new value contribution was not substantial. The debtor's argument, however, misses the point. The court concluded that the debtor failed to prove that its $40,000 contribution was essential or necessary to the debtor's reorganization. There simply was no evidence that trade credit would more likely be advanced to the debtor if vendors shared in a distribution of $217,000 (12.8%) rather than a distribution of $177,000 (10.4%). The small difference in payment was not substantial and, even if it were, there was no evidence that the difference in payment would result in trade creditors extending credit to the debtor post-confirmation. To further enhance the point, the court pointed out that the $40,000 contribution represented only 2.4% of the $1.7 million in unsecured claims. Arguing on appeal that the $40,000 could be characterized as a substantial payment under case law with different facts and circumstances does not address the critical issue, namely, whether the debtor proved its $40,000 contribution was essential or necessary to its reorganization.[4] Thus, the court cannot

---

[4] The debtor also argues in its brief that "[t]he sole fact that the contribution was to be used to fund the Plan should have been sufficient for a finding that the contribution is 'essential.'" The court knows of no authority that stands for the proposition that any contribution to a plan for payment to creditors automatically satisfies the "necessary and essential" requirement. That requirement must be satisfied by a showing that the new value is "necessary or essential to the success of the reorganization." *In re Crosscreek Apartments, Ltd.,* 213 B.R. at 546.

conclude that the debtor has raised "serious questions" casting at least some doubt on the court's determination that the debtor failed to prove its $40,000 payment was essential or necessary to its reorganization.

The court also found that the debtor's plan could not be confirmed because the plan undervalued MLBFS's secured claim and did not provide for deferred cash payments having a present value at least equal to the secured claim. *See* 11 U.S.C. § 1129(b)(2)(A). The debtor has failed to raise any questions on appeal that challenge the denial of confirmation on this ground, in that the debtor's own appraisal exceeds the amount of the secured claim stated in the plan.

The next issue is whether the debtor has raised "serious questions" on appeal that might lead to a reversal of the court's November 7, 2006, order that granted the motion for relief from stay filed by MLBFS. In other words, has the debtor shown that the court might have committed error in granting MLBFS's motion for relief from stay?

The hearing on the motion for relief from stay and the confirmation hearing were heard at the same time. The parties had agreed to this arrangement. MLBFS's motion for relief from stay, originally filed on March 16, 2006, had been passed seven times during 2006 and the motion was to be heard and decided in conjunction with the confirmation hearing on the debtor's second plan. Under 11 U.S.C. § 362(g), the party requesting relief from the stay has the burden of proof on the debtor's equity in property, and the party opposing relief has the burden of proof on all other issues. The proof established there was no equity in the property. There was no proof that there was a reasonable possibility of a successful reorganization within a reasonable time. The debtor had offered a plan of reorganization that again violated the absolute priority rule after the

debtor's first plan failed for the same reason. Because the debtor failed to satisfy the new value exception to the absolute priority rule, this was not a case in which the debtor could simply increase the valuation of MLBFS's secured claim in its plan and achieve confirmation. The debtor's case had been pending more than 16 months and neither of the debtor's prior two plans were confirmable. Under all of these circumstances, MLBFS was entitled to have its motion for relief from stay granted, and the debtor has failed to raise "serious questions" that cast doubt on the propriety of granting MLBFS's motion.

Finally, with respect to its motion to alter or amend, or for a new trial, the debtor has failed to raise any "serious questions" that would lead this court to believe that the district court might reverse the court's denial of that motion. The court examined the standards for granting relief under Rule 59 of Rules of Civil Procedure and concluded that the debtor failed to meet those standards. The debtor has failed to show how the court erred in applying those standards.

The debtor has been through the confirmation process twice during the last 16 months, and during that time it has failed to propose a confirmable plan. There is no equity in the company for the debtor's sole shareholder, and the party with the greatest financial stake in the debtor's company is MLBFS. The parties have not been able to come to an agreement regarding the future course of the debtor, and the issues between the parties came to a head during the hearing on the debtor's second plan and MLBFS's motion for relief from stay. The court decided those issues based on the evidence presented and the controlling law. In the court's opinion, there was no close call in resolving the issues: the debtor offered no proof that the $40,000 contribution was necessary and essential to its reorganization; the debtor's own evidence showed that it un-

dervalued MLBFS's secured claim; and there was no proof that the debtor could obtain a successful reorganization within a reasonable time. Hence, the court believes that it properly decided the issues presented to it, and the debtor has failed to raise "serious questions" on appeal going to the merits of the issues decided. Accordingly, the court must decline the debtor's request for a stay pending appeal.[5] A separate order will enter.

###

---

[5] In light of the court's conclusion, it is not necessary to consider in any detail the harm that might befall MLBFS if a stay pending appeal were granted. Suffice it to say that MLBFS has not received any payments from the debtor during the course of this chapter 11 case and the debtor continues to use MLBFS's collateral. It is not known to what degree the equipment has been depreciating, nor does the court know the amount of cash, accounts receivable, or inventory on hand. With respect to whether the public interest demands that a stay be granted pending appeal, the court notes that the dispute in this case is between a private debtor company with no equity and its major secured creditor with a lien on virtually all of the debtor's assets. Under the circumstances described in this memorandum, the court does not see how the public would be harmed by failing to grant a stay pending appeal.